# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SSM HEALTH CARE OF OKLAHOMA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHS/COMMUNITY HEALTH SYSTEMS, INC., and CHSPSC, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. _____ |

## COMPLAINT

COMES NOW, Plaintiff SSM Health Care of Oklahoma, Inc. ("SSM"), and for its cause of action against Defendants CHS/Community Health Systems, Inc. ("CHS") and CHSPSC, LLC ("CHSPSC") (collectively "Defendants"), alleges and states the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff SSM Health Care of Oklahoma, Inc. is an Oklahoma not-for-profit corporation with its principal place of business in Oklahoma City, Oklahoma.

2. Defendant CHS/Community Health Systems, Inc. is a foreign corporation organized under the laws of Delaware with its principal place of business in Franklin, Tennessee. CHS may be served with process through its registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

3. Defendant CHSPSC, LLC is a foreign limited liability company organized under the laws of Delaware with its principal place of business in Franklin, Tennessee. Upon information and belief, CHS is the sole member of CHSPSC. CHSPSC may be

served with process through its registered agent for service: Corporation Service Company, 10300 Greenbriar Place, Oklahoma City, OK 73159.

4. This case is brought under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). SSM is a citizen of the State of Oklahoma. CHS and CHSPSC are each citizens of both Delaware and Tennessee for purposes of diversity jurisdiction. The matter in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendants. Defendants and/or their affiliated entities leased, operated, and/or provided services related to the hospital facility located in Midwest City, Oklahoma, that is the subject of the agreement(s) that gives rise to this action.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

7. The parties have waived the right to trial by jury by agreement.

## BACKGROUND

8. SSM is a healthcare provider based in Oklahoma City which operates healthcare facilities throughout Oklahoma.

9. CHS and its affiliated entities directly or indirectly leased and operated AllianceHealth Midwest hospital located at 2825 Parklawn Drive, Midwest City, Oklahoma 73110 (the "Hospital").

10. On or about December 8, 2020, SSM and CHS entered into an Asset Purchase Agreement (the "APA"), pursuant to which SSM purchased from CHS and its affiliated entities substantially all of the assets which are directly or indirectly related to,

2

necessary for, or used in connection with, the operation of the Hospital, together with certain related businesses, including medical office buildings, outpatient care facilities, physician practices, and ancillary services.

11.     Pursuant to Section 10.15 of the APA, CHS agreed that one of its Affiliates would enter into a Transition Services Agreement with SSM.

12.     Section 12.18 of the APA defines an "Affiliate" of an entity as "any person or entity that directly or indirectly controls, is controlled by or is under common control with, the entity in question and the term 'control' means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity whether through ownership of voting securities, by contract or otherwise."

13.     In connection with the APA, on or about April 1, 2021, SSM entered into a Hospital Transition Services Agreement (the "TSA") with CHSPSC, an Affiliate of CHS, pursuant to which CHSPSC agreed to provide certain Transition Services to SSM in connection with the purchase of the Hospital. The TSA was incorporated into the APA as Exhibit E. According to Section 12.1 of the APA, "[e]ach Schedule and Exhibit to this Agreement shall be considered a part hereof as if set forth herein in full." A copy of the TSA is attached as Exhibit "1" hereto.

14.     Pursuant to the TSA, CHSPSC agreed to provide the Transition Services to SSM, using its own employees, for an initial period of six (6) months, which could be extended for two (2) additional renewal periods of three (3) months each (the entire 12-month period from April 1, 2021, to March 31, 2022, is referred to as the "Transition Period"), as described in Exhibit A to the TSA. Significantly, CHSPSC agreed that:

3

"CHSPSC shall use good faith efforts to provide the Transition Services in a manner consistent with how CHSPSC provides similar services to CHSPSC affiliates." TSA, Section 1.

15. Among other things, CHSPSC agreed as follows:

> CHSPSC will provide billing, insurance follow-up, cash posting/balancing, refund processing, adjustment processing, vendor placements, charity management services, denial reporting and appeal of billing related denials. CHSPSC shall use good faith efforts to provide these services in a manner consistent with how such services are rendered in connection with CHSPSC's own accounts and accounts of CHSPSC's affiliates.
>
> * * * *
>
> CHSPSC will provide, and will use commercially reasonable efforts to cooperate with its contractors and subcontractors to provide, the Company's vendors with access to that information, and those systems, as reasonably requested by the Company, to allow the Company to transition the services described herein. CHSPSC also will, and will use commercially reasonable efforts to cause its contractors and subcontractors to, work in good faith with the Company to transfer all files and information necessary to transition the services and functionalities described herein to the Company.

Exhibit A to TSA, Paragraphs 1 and 11.

16. CHSPSC further agreed that "CHSPSC will provide the Transition Services in good faith and with due care consistent with the care CHSPSC exercises in performing such Transition Services for itself and/or its affiliates." *See* TSA, Section 7(a).

17. In return for the provision of the Transition Services, SSM agreed to pay CHSPSC the compensation set forth in Exhibit B to the TSA. *See* TSA, Section 5.

18. The primary purpose of the TSA was to allow CHSPSC to continue to manage the Hospital's revenue cycle functions (*i.e.*, billing and collecting payors for

services provided at the Hospital) for the benefit of SSM using the existing systems in place, including proprietary software utilized by CHS/CHSPSC and/or their Affiliates (Medhost), during the Transition Period in a manner consistent with how CHSPSC did or would perform those same tasks for itself and its Affiliates (such as CHS), until SSM could transition those services to its own systems and teams.

19. From April 1, 2021, to approximately December 10, 2021, CHSPSC was solely responsible for performing the revenue cycle functions for the Hospital. On or about December 10, 2021, SSM completed the transition of the revenue cycle operation from CHS's software (Medhost) to its own software (Epic) for services rendered from that date forward. From December 10, 2021, through the remainder of the Transition Period, CHSPSC remained responsible for billing and collecting claims for services rendered prior to that date. At the conclusion of the Transition Period, SSM directed that all data from CHS's system be migrated to a third-party system where its contractor would take over responsibility for collecting any remaining open accounts for services rendered prior to the transition to Epic on December 10, 2021.

20. As part of its decision to enter the APA with CHS, SSM relied upon CHS's representations that CHSPSC would perform the Transition Services consistent with how it serviced CHS's own accounts, as well as the historical collection performance of the Hospital (net collections as a percent of gross charges) shared as part of the due diligence process. From this review, SSM created a baseline revenue projection for the Transition Period (the "Baseline Revenue Projection"). This Baseline Revenue Projection was

consistent with SSM's own experience in managing revenue cycle functions for its healthcare facilities, as well as standard and customary practices within the industry.

21.     CHSPSC breached its obligations under the TSA. As set forth in more detail below, CHSPSC did not perform the Transition Services in good faith and/or with due care, consistent with the care CHSPSC would exercise in performing the same services for itself or its Affiliates, or in compliance with minimum industry standards.

22.     As a result of CHSPSC's breach of its obligations under the TSA, SSM's revenues during the Transition Period, and in particular during the eight (8) months before SSM was able to transfer the revenue cycle function for new services rendered to its own systems and teams, fell significantly below SSM's Baseline Revenue Projection. Moreover, the data migrated from CHS to SSM's contractor at the conclusion of the Transition Period was of such low quality that it was virtually useless, and SSM collected no meaningful amounts on the remaining open accounts.

23.     The acts and/or omissions of CHSPSC described herein give rise to claims for breach of the APA by CHS and/or of the TSA by CHSPSC.

## CAUSE OF ACTION
## BREACH OF CONTRACT

24.     SSM incorporates all allegations set forth above as if fully set forth herein.

25.     CHS and its Affiliates utilized proprietary billing software in connection with the operation of the Hospital. Upon acquisition of the Hospital by SSM, SSM had no choice but to rely on CHS and/or its Affiliates to bill and collect for services rendered at the Hospital for at least some portion of the Transition Period, until SSM could meaningfully

transfer all revenue cycle and accounts receivable functions and services to its own systems and teams and manage them directly.

26.     As a result, as a part of the sale, CHS agreed that one of its Affiliates would enter into a TSA with SSM, pursuant to Section 10.15 of the APA and Exhibit E thereto, to provide the Transition Services.

27.     SSM and CHSPSC entered into the TSA effective April 1, 2021. The TSA had an initial six (6) month term and then two (2) additional renewal periods of three (3) months each. Thus, the Transition Period lasted from April 1, 2021, to March 31, 2022, and during that time, CHSPSC was responsible for providing A/R management services to SSM as outlined in the TSA.

28.     The Transition Services included, among other things, "billing, insurance follow-up, cash posting/balancing, refund processing, adjustment processing, vendor placements, charity management services, denial reporting and appeal of billing related denials." Exhibit A to TSA, Paragraph 1. CHSPSC agreed to provide these services in good faith and with due care.

29.     Pursuant to Section 1 of the TSA, CHSPSC agreed that: "CHSPSC shall use good faith efforts to provide the Transition Services in a manner consistent with how CHSPSC provides similar services to CHSPSC affiliates."

30.     CHSPSC failed to provide the Transition Services in good faith and with due care, in a manner consistent with how CHSPSC handles its own accounts and/or provides similar services to itself or its Affiliates. CHSPSC's acts or omissions include, without limitation, the following:

7

      a.      CHSPSC failed to provide timely, complete, and necessary access to CHS software and data to SSM and its contractors. As a primary example, SSM was not provided access to CHS's electronic billing system (Medhost) during the Transition Period and SSM's contractors were never provided access.

      b.      CHSPSC failed to disclose critical information during the Transition Period, including information on account history, notes, and other details that were maintained only in a third-party software management system (Artiva), which CHS used in connection with its billing and collection functions. Neither SSM nor its contractors were ever provided access to this system or provided the data that was housed in this system.

      c.      CHSPSC failed to bill for certain services at all and/or failed to bill them to the correct payor.

      d.      CHSPSC provided inadequate performance reporting and follow-up.

      e.      CHSPSC provided incomplete data and/or data that lacked integrity at the end of the Transition Period which prevented SSM and its contractors from collecting remaining amounts due on open accounts.

Taken as a whole, CHSPSC's performance during the Transition Period did not meet minimum standards that would be considered reasonable and customary for the industry.

    31.    In contract law, the state of mind of the breaching party is typically irrelevant, as courts do not take it into account (*i.e.*, a breach is a breach, based on objective standards

of performance). Here, however, CHSPSC bargained for an exculpatory clause whereby it attempted to insulate itself from full liability for breach of contract damages unless its conduct rises to the level of "fraud, willful misconduct or gross negligence." Otherwise, under Section 7(b) of the TSA, "any liability of CHSPSC under this Agreement shall in no event exceed the aggregate amount of fees paid to CHSPSC by the Company hereunder."

32. The aggregate amount of fees paid to CHSPSC by SSM under the TSA is approximately $5.129 million.

33. Under Oklahoma law, "exculpatory clauses cannot relieve one from liability for fraud, willful injury, gross negligence or violation of the law." *Schmidt v. United States*, 1996 OK 29, ¶ 2, 912 P.2d 871, 872.

34. Oklahoma defines gross negligence as "the want of slight care and diligence." 25 Okla. Stat. § 6.

35. Willful misconduct has been defined as conduct that "exhibits a conscious indifference to consequences in circumstances" where the actor knows harm is likely. *Foster v. Emery,* 1972 OK 38, ¶ 16, 495 P.2d 390.

36. Some or all of the conduct of CHSPSC which gives rise to SSM's damages here rises to the level of gross negligence and/or willful misconduct. These acts and/or omissions include, without limitation, the following:

    a. During pre-acquisition diligence, SSM relied upon certain reports provided by Defendants which indicated that Defendants routinely billed Indian Health Services ("IHS") for services provided to their patients. However, during the Transition Period, Defendants failed to

9

        bill IHS on behalf of SSM for services SSM provided to IHS patients and CHSPSC did not disclose this group of unbilled claims. SSM did not learn of this group of claims until after the Transition Period had ended, by which time those accounts were no longer recoverable.

    b.    SSM identified certain claims that were eligible for reimbursement from the Health Resources and Services Administration ("HSRA") under the COVID-19 CARES Act for qualified patients during the Transition Period and provided information to CHSPSC so that it could be submitted for reimbursement. However, CHSPSC failed to take any action on these claims. This failure directly cost SSM the opportunity to recover approximately $1.6 million in CARES Act funds, which were entirely independent of any amounts due from payors otherwise discussed herein.

Accordingly, because CHSPSC's conduct rises to the level of gross negligence and/or willful misconduct, the exculpatory clause in Section 7(b) is invalid as a matter of law, and SSM's recovery is not limited to the aggregate amount of fees paid to CHSPSC.

    37.    The Hospital's collection performance during the Transition Period, which began on April 1, 2021, and concluded on March 31, 2022 – and particularly during the initial period where CHSPSC had full responsibility for billing and collection (*i.e.*, services provided prior to December 10, 2021, when SSM completed the transition of the A/R function to its own software) – was significantly below CHS's historical pre-sale performance, as reflected in SSM's Baseline Revenue Projection. And the data transferred

from CHS to SSM's contractor at the conclusion of the Transition Period was of such low quality that SSM collected no meaningful amounts on the remaining open accounts. Collection performance improved again once the transition to SSM's own software was complete, further confirming that the significant downturn in collections was caused by CHSPSC's substandard performance.

38. As a result of CHS's breach of its contractual obligations under the TSA during the Transition Period, SSM was damaged in an amount that exceeds the aggregate amount of fees paid to CHSPSC by SSM, because: (1) total collections during the Transition Period were significantly below SSM's Baseline Revenue Projection; and/or (2) CHSPSC did not bill and/or collect any payment, or collected less than the amount of the expected payment, for certain services provided at the Hospital during the Transition Period.

39. In addition to (and not included within) the above damages, SSM failed to receive approximately $1.6 million in CARES Act funding for services provided at the Hospital during the Transition Period, for which it otherwise would have been eligible, as a result of CHSPSC's acts and/or omissions.

40. CHS specifically agreed in Section 12.18 of the APA that it had the ability to direct or control the conduct of its Affiliate and further agreed that its Affiliate would enter into the TSA with SSM, which was incorporated into and made part of the APA pursuant to Sections 10.15 and 12.1.

41. Therefore, as a direct and proximate cause of CHSPSC's breach of the TSA, and CHS's corresponding breach of the APA, SSM has been damaged by Defendants in an amount according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SSM Health Care of Oklahoma, Inc., prays that this Court enter judgment against Defendants for an award of damages to SSM sufficient to make SSM whole, legal fees, costs, and for such other relief as this Court deems just, equitable and proper.

Respectfully submitted,

*s/Daniel G. Webber, Jr.*
Phillip G. Whaley, OBA #13371
Daniel G. Webber, Jr., OBA #16332
Patrick R. Pearce, Jr., OBA #18802
Devin C. Frost, OBA #35114
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
dwebber@ryanwhaley.com
rpearce@ryanwhaley.com
dfrost@ryanwhaley.com

*Attorneys for Plaintiff*