UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SSM HEALTH CARE OF OKLAHOMA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHS/COMMUNITY HEALTH SYSTEMS, INC.; and CHSPSC, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. CIV-25-1223-R

### ORDER

Before the Court is Defendant CHS/Community Health Systems, Inc.'s Motion to Dismiss and Alternative Motion for a More Definite Statement [Doc. No. 22]. Plaintiff SSM Health Care of Oklahoma, Inc., responded [Doc. No. 23] and Defendant replied [Doc. No. 24]. The matter is now at issue.

### BACKGROUND[1]

This dispute arises from the purchase of a hospital. On or about December 8, 2020, CHS and its affiliated entities entered an Asset Purchase Agreement ("APA") with Plaintiff, pursuant to which Plaintiff purchased from CHS substantially all assets related to the operation of AllianceHealth Midwest Hospital [Compl., Doc. No. 1, ¶¶ 9-10]. Section 10.15 of the APA stated that at closing, "an Affiliate of Seller and Buyer will enter into a Transition Services Agreement substantially in the form attached hereto as Exhibit E"

---

[1] When reviewing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "take[s] the facts in the complaint as true . . . and [ ] views such facts in the light most favorable to the plaintiff[.]" *Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025) (internal citations and quotation marks omitted).

1

[APA,[2] Doc. No. 23-1, § 10.15]. *Id.* ¶ 11. The APA defines "Affiliate" as "any person or entity that directly or indirectly controls, is controlled by or is under common control with, the entity in question and the term 'control' means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity whether through ownership of voting securities, by contract or otherwise." *Id.* ¶ 12; APA, § 12.18. The APA further provided that at closing, the Seller would deliver to Buyer a "Hospital Transition Services Agreement in substantially the form attached hereto as Exhibit E, . . . fully executed by an Affiliate of Seller." *Id.* § 2.2(k).

On or about April 1, 2021, Plaintiff entered a Hospital Transition Services Agreement ("TSA") with CHSPSC, an Affiliate of CHS. Compl., ¶ 13. Pursuant to the TSA, CHSPSC agreed to provide services such as billing, insurance follow-up, and refund processing to Plaintiff for up to one year until Plaintiff could transition those services to its own systems and teams. *Id.* ¶¶ 14-18. CHSPSC agreed to provide such services using "good faith efforts . . . in a manner consistent with how such services are rendered in

---

[2] When ruling on a 12(b)(6) motion, "[i]n addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Plaintiff references the APA and Transition Services Agreement in its Complaint. *See* Doc. Nos. 1, 1-1, 23-1, 24-1. Both the APA and TSA are central to Plaintiff's claims. Defendant contends, however, that the TSA Plaintiff attached to its Complaint was the executed TSA, while the TSA incorporated into the APA was merely an unexecuted, form version of the TSA. Either way, the relevant provisions of both documents are identical, and the Court thus properly considers the APA and TSA when evaluating the Complaint. The Court will refer to the allegedly executed TSA as the Executed TSA and the allegedly incorporated form TSA as the Form TSA for clarity reasons. In so doing, the Court does not make a ruling on which document was actually incorporated into the APA.

2

connection with CHSPSC's own accounts and accounts of CHSPSC's affiliates" [Executed TSA, Doc. No. 1-1, ¶ 1 & p. 11; Form TSA, Doc. No. 24-1, ¶ 1 & p. 9]. *Id.* ¶ 15.

CHSPSC was solely responsible for performing the Hospital's revenue cycle functions from April 1, 2021, to about December 10, 2021, when Plaintiff transitioned such operations to its own services. *Id.* ¶ 19. Nevertheless, until the end of the one-year transition period, CHSPSC continued billing and collecting claims for services rendered before December 10, 2021. *Id.* At the end of the transition period, Plaintiff had all data from CHS's system transferred to a third-party system so its contractor could take over responsibility for accounts for services rendered prior to December 10, 2021. *Id.*

Plaintiff created a baseline revenue projection for the transition period based on the Hospital's historical collection performance, its own experience with managing revenue cycle functions, and standard industry practices. *Id.* ¶ 20. According to Plaintiff, revenues during the transition period fell significantly below its baseline projections. *Id.* ¶ 22.

Plaintiff thereafter brought this breach of contract suit against CHS and CHSPSC, asserting CHSPSC did not perform the transition services in good faith and/or with due care. *Id.* ¶¶ 21, 30. Specifically, Plaintiff alleges CHSPSC failed to provide timely and complete access to CHS software and data, failed to bill or bill correctly for certain services, and provided inadequate performance reporting. *Id.* ¶ 30. Defendant CHS moves to dismiss Plaintiff's claim, asserting CHS is not a party to the TSA and Plaintiff has not pled any facts establishing CHS breached the APA or assumed or guaranteed CHSPSC's obligations under the TSA.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

CHS asserts it is not a party to the TSA and Plaintiff has not pleaded any factual or legal basis for CHS's liability for CHSPSC's alleged violation of the TSA. Plaintiff disagrees, asserting CHS expressly assumed the obligation of performance of the TSA by CHSPSC, an Affiliate under its control.

When interpreting contracts in Oklahoma, courts shall apply the "plain and ordinary sense" to contractual language, *Littlefield v. State Farm Fire & Cas. Co.*, 857 P.2d 65, 69 (Okla. 1993), and not "force[ ] or constrain[ ] interpretations to create . . . [or] construe ambiguities." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996). Additionally, courts "will not undertake to rewrite . . . nor to make . . . either party

a better contract than the one . . . executed." *Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (citing *Max True Plastering*, 912 P.2d at 869). Likewise, courts "follow the rules applicable generally to contracts, and [ ] must attempt to ascertain the intention of the parties, based upon the whole contract." *Wallace v. Sherwood Constr. Co.*, 877 P.2d 632, 634 (Okla. Civ. App. 1994) (citing *Luke v. Am. Sur. Co. of N.Y.*, 114 P.2d 950 (Okla. 1941)).

CHS asserts that because the TSA does not create privity of contract between Plaintiff and CHS, it cannot serve as a basis for CHS's liability. Indeed, both the Executed and Form TSAs indicate the parties thereto are CHSPSC, LLC and SSM Health Care of Oklahoma—*not* CHS itself. Executed TSA, at p. 1; Form TSA, at p. 1.

> "Contracts are binding only upon those who are parties thereto, and are enforceable only by the parties to a contract or those in privity with it . . ." *Drummond v. Johnson*, 643 P.2d 634, 639 (Okla. 1982). "Privity of contract is an essential element of a cause of action on a contract, or an action based on a contractual theory. As a general rule only the parties and privies to a contract may enforce it." 17B C.J.S. Contracts § 836. "[O]ne of the reasons for the rule that privity of contract is necessary to an action founded on a breach of contract is that otherwise a man's responsibility for not carrying out his agreement with another would have no limit; there would be no bounds to actions if the ill effect of the failure of a man to perform his agreement could be followed down the chain of results to the final effect." *Okmulgee Coal Co. v. Hinton*, 218 P. 319, 320 (Okla. 1923).

*Wells Fargo Bank, N.A. v. Heath*, 280 P.3d 328, 334 (Okla. 2012) (footnotes replaced with in-text citations). Plaintiff does not appear to dispute that, with respect to the TSA, CHS is not in privity of contract with Plaintiff.

Plaintiff must, therefore, allege some other basis for holding CHS responsible for CHSPSC's alleged failure to perform the obligations in the TSA. Plaintiff's proffered

5

theory of liability is that reading the APA as a whole reveals CHS expressly assumed the obligations of the TSA, which was made part of the APA. The APA states: "Each Schedule and Exhibit to this Agreement shall be considered a part hereof as if set forth herein in full." APA, § 12.1. The TSA, as Exhibit E, falls under this provision of the APA, and thus the TSA is arguably considered part of the APA.[3] The question is whether this incorporation means CHS assumed CHSPSC's obligations pursuant to the TSA.

The parties appear to agree that to assert a claim for breach of contract against CHS for CHSPSC's failure to perform the TSA, CHS must have expressly assumed CHSPSC's obligations under the TSA.[4] Plaintiff claims the definition of "Affiliates" provided in the APA ("any person or entity that directly or indirectly controls, is controlled by or is under common control with, the entity in question . . ."), *id.* § 12.18, "underscored the representation that CHS had control over, and was assuming responsibility for, the acts of CHSPSC." Doc. No. 23 at p. 4. Plaintiff also alleges

---

[3] The Court notes CHS's assertion that only the Form TSA—not the Executed TSA—was incorporated into the APA. Due to the limited briefing on this point, the Court does not make a ruling on whether the version of the TSA incorporated into the APA affects the breadth of CHS's obligations. The Court limits itself to an analysis of the contractual language discussed by the parties—language which neither party asserts differs between the Executed and Form TSAs.

[4] The parties devote part of their briefing to a discussion of the case *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv. II, LLC*, 887 F.3d 1003, 1030 (10th Cir. 2018), *as revised* (Apr. 13, 2018), which involved a complex series of transfers of oil and gas interests subject to various agreements between many different parties. *Spring Creek* is factually distinct from the instant case but can be cited for the general proposition that a failure to disclaim an agreement entered into by one's predecessor in interest "is nowhere near the equivalent of expressly assuming it." *Id.* at 1030-31 (citing *Golden v. SM Energy Co.*, 826 N.W.2d 610, 616 (N.D. 2013)) ("An assignee is responsible only for the obligations of the assignor which the assignee contracts to undertake.").

> CHS specifically agreed in Section 12.18 of the APA that it had the ability to direct or control the conduct of its Affiliate and further agreed that its Affiliate would enter into the TSA with SSM, which was incorporated into and made part of the APA pursuant to Sections 10.15 and 12.1.

Compl., ¶ 40. Plaintiff makes a similar argument based upon Section 3.2 of the APA, which states that the "execution . . . and performance of this Agreement by Seller and all other agreements referenced herein, or ancillary hereto, to which Seller is a party, . . . are within its corporate powers . . . ." APA, § 3.2(a). According to Plaintiff, reasonably interpreted, this language is CHS guaranteeing performance of the TSA. The Court, however, is unconvinced.

"A special promise to answer for the debt, default or miscarriage of another" must "be in writing and subscribed by the party to be charged," or such a promise will be considered invalid. OKLA. STAT. tit. 15, § 136(2). Though Plaintiff makes a valiant attempt to explain how the contractual language indicates an express assumption of performance of the TSA by CHS, the Court simply cannot find such an express assumption anywhere within the language of the TSA or APA.

The language of the APA is clear: at closing, "an Affiliate of [CHS] . . . will enter into a Transition Services Agreement" with SSM. APA, § 10.15. Also at closing, CHS "shall deliver to" SSM a "Hospital Transition Services Agreement . . . fully executed by an Affiliate of" CHS. *Id.* § 2.2(k). These were CHS's express obligations regarding the TSA. Contrary to Plaintiff's representations in its Response, it was not CHS who "agreed its Affiliate would 'use good faith efforts to provide the Transition Services.'" *See* Doc. No. 23 at pp. 7-8. Instead, the TSA reads that "*CHSPSC* will provide the Transition

7

Services in good faith and with due care consistent with the care CHSPSC exercises in performing such Transition Services for itself and/or its affiliates." Executed TSA, ¶ 7(a); Form TSA, ¶ 7(a) (emphasis added).

The APA expressly states it was "the result of negotiations between sophisticated parties of equal bargaining power represented by counsel." APA, § 12.21. Had Plaintiff intended CHS to expressly assume the TSA's good faith performance, it had the opportunity and sophistication to negotiate such terms. The Court will not re-write either the APA or TSA to impose new express obligations upon CHS. Based on the plain language of both the APA and the TSA, Plaintiff has failed to plead CHS *expressly assumed* the obligations of the TSA.

Much of Plaintiff's briefing revolves around CHS's alleged control over CHSPSC. Plaintiff asserts that the representation that CHS could control CHSPSC's conduct in § 12.18's definition of "Affiliates" would be "meaningless" if unaccompanied by an agreement that CHS would stand behind CHSPSC's post-closing services. Plaintiff also cites Section 3.2 of the APA, which states:

> The execution, delivery, and performance of this Agreement by Seller and all other agreements referenced herein, or ancillary hereto, *to which Seller is a party*, . . . are within its corporate powers.

APA, § 3.2(a) (emphasis added). Plaintiff argues that, given the definition of Affiliate, a reasonable interpretation of this language is that CHS guaranteed performance of the TSA as an agreement "referenced herein."

Plaintiff further cites to Section 3.3 of the APA, which states:

8

> This agreement and all agreements to which Seller or any of the Seller Entities will become a party pursuant hereto are and will constitute the valid and legally binding obligations of Seller and/or such Seller Entities, respectively, and are and will be enforceable against it or them in accordance with the respective terms hereof or thereof.

*Id.* § 3.3. Plaintiff asserts this section creates ambiguity as to whether "[t]his Agreement and all agreements to which Seller . . . will become a party" includes the TSA. Plaintiff claims CHSPSC, as an Affiliate, is more accurately described as the "Seller" (CHS) itself.[5]

Though Plaintiff characterizes its arguments regarding control as matters of contractual interpretation and express assumption, this Court disagrees. These arguments essentially boil down to a claim by Plaintiff that CHS and CHSPSC should be treated as one-and-the same by virtue of CHS's alleged control over CHSPSC. Another court in this district has dealt with similar claims in the same manner when analyzing whether a parent corporation could be held responsible for an insurance contract between its subsidiary and one of its subsidiary's insureds:

> The contract claim against Zurich is readily resolved by noting it was not a party to the insurance contract. It is undisputed that the policy involved here was issued only by Universal and that Zurich was not a party to it. . . . Plaintiff states that Universal is a subsidiary of Zurich, but that is of no moment unless there is some basis shown for ignoring the separate corporate entities. *See Okla. Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 160 P.3d 936, 945 & nn. 17-18 (Okla. 2007) (absent extraordinary circumstances, a parent corporation and its wholly-owned subsidiary are separate legal entities and the parent neither enjoys the rights nor incurs the obligations of the subsidiary).

*J & K Body Shop, Inc. v. Zurich Am. Ins. Co.*, No. CIV-11-0077-HE, 2011 WL 5008020, at *3 (W.D. Okla. Oct. 20, 2011).

---

[5] Plaintiff concedes CHSPSC is not one of the Seller Entities.

9

Plaintiff is essentially asking the Court to "ignore the[ seemingly] separate and distinct corporate identities" of CHS and CHSPSC. *Okla. Oncology*, 160 P.3d at 945. Indeed, if "one corporation is but an instrumentality or agent of another, corporate distinctions must be disregarded and the two separate entities must be treated as one." *Frazier v. Bryan Mem'l Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989). "Whether this theory of vicarious liability be based on the principles of agency or on the doctrine of 'piercing the corporate veil,'" *id.*, such an inquiry typically involves an analysis of factors having to do with the level of control the dominant corporation has over the subservient one. *See id.*

Plaintiff asserts that CHS's alleged "control" over CHSPSC should suffice for this Court to find it has pleaded a breach of contract claim against CHS. But Plaintiff's Complaint does not meaningfully allege CHS's control, nor does it engage with the factors of control utilized by Oklahoma courts. Plaintiff's argument hinges, primarily, on the APA's definition of "Affiliate."

"The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to establish whether the allegations, if proven, show that the plaintiff is entitled to relief." *Kessler v. Mathis*, No. 25-cv-00181-LTB-RTG, 2025 WL 1147750, at *2 (D. Colo. Apr. 1, 2025) (citing *Monument Builders of Greater Kan. City Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989)). Plaintiff's allegations are insufficient to plead, or to put CHS on notice of, a claim of vicarious liability against it for CHSPSC's

alleged failings.[6] At this time the Court will not further engage with Plaintiff's or Defendant's arguments related to CHS's control over CHSPSC.

Plaintiff has failed to plead either a direct or vicarious liability claim for breach of contract against CHS. It has, however, requested leave to amend its Complaint to allege CHS is liable under an agency or alter ego theory. Plaintiff's request is granted.

## CONCLUSION

Accordingly, Plaintiff's claim for breach of contract against CHS is DISMISSED. Plaintiff shall have twenty-one days from the date of this Order to file an Amended Complaint.

IT IS SO ORDERED this 23rd day of February, 2026.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[6] In any event, Plaintiff admits it did not plead an agency or alter ego theory of liability against CHS because it contends CHS *expressly* agreed to be bound by the TSA's obligations.

11