**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SSM HEALTH CARE OF OKLAHOMA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:25-cv-01223-R |
| CHS/COMMUNITY HEALTH SYSTEMS, INC., and CHSPSC, LLC, | ) ) ) | |
| Defendants. | ) | |

**JOINT STATUS REPORT AND DISCOVERY PLAN**

Date of Conference:        August 4, 2026

Appearing for Plaintiff:    Daniel G. Webber, Jr.; Patrick R. Pearce, Jr.

Appearing for Defendant:  James G. Munisteri; Fred Leibrock

**Jury Trial Demanded ☐ - Non-Jury Trial ☒\***
**\***The parties contractually agreed to waive the right to a trial by jury.

1.    **BRIEF PRELIMINARY STATEMENT**.  SSM Health Care of Oklahoma, Inc. (SSM) is a healthcare provider based in Oklahoma City, which operates healthcare facilities throughout Oklahoma. CHS/Community Health Systems, Inc. (CHS) is a leading healthcare provider that operates hospitals nationwide. CHSPSC, LLC is an affiliate of CHS that provides professional management and consulting services to various CHS hospitals, entities, and affiliates.

On or about December 8, 2020, SSM entered into an Asset Purchase Agreement (APA) with CHS to acquire the AllianceHealth Midwest hospital, located in Midwest City, Oklahoma (the Hospital). In connection the purchase, CHS also agreed that one of its Affiliates would enter into an agreement to provide post-acquisition transition services to SSM. SSM and CHSPSC entered the Transition Services Agreement (TSA) on or about April 1, 2021.

From approximately April 1, 2021 to March 30, 2022, CHSPSC provided the Transition Services to SSM. These services included billing, insurance follow-

up, cash posting/balancing, refund processing, adjustment processing, vendor placements, charity management services, denial reporting and appeal of billing related denials.

a. <u>Plaintiff</u>:   SSM contends that CHSPSC breached the TSA because its performance during the relevant period fell below CHSPSC's duty under the terms of the TSA to perform the services in good faith and in a manner consistent with how CHSPSC would provide similar services to its affiliates, including CHS, causing SSM's revenues during the relevant period to fall significantly below what was projected. SSM further contends that CHS is vicariously liable for CHSPSC's breach of the TSA because CHSPSC acted as the agent and/or alter ego of CHS in connection with the relevant transaction(s) and the provision of Transition Services to SSM.

b. <u>Defendants</u>: Defendants deny that CHSPSC breached the TSA or otherwise acted wrongfully, and CHSPSC contends that it performed the transition services in good faith and with due care consistent with the applicable contractual standard. During the relevant period, SSM did not terminate the TSA, but instead twice elected to renew it and continued receiving CHSPSC's services through both renewal terms. CHS/ denies liability because the APA required only that CHS/ cause an Affiliate to enter into a transition services agreement and deliver an executed copy at closing, which occurred. The TSA identifies SSM and CHSPSC as the contracting parties, and neither the APA nor the TSA makes CHS/ responsible for CHSPSC's performance or supports SSM's agency, alter-ego, or veil-piercing theories.

As for the claimed damages, CHSPSC believes that SSM has incorrectly assumed certain facts and that the amount in dispute is nominal compared to the alleged damages. Moreover, CHSPSC believes that performance of the TSA is not a guarantee of collection from public and private third-party payers and that even the nominal amount is not recoverable.

2.   **JURISDICTION**.  This case is brought under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

3.   **STIPULATED FACTS**.  The following facts are stipulated:

1.   SSM is an Oklahoma not-for-profit corporation with its principal place of business in Oklahoma City, Oklahoma.
2.   CHS is a foreign corporation organized under the laws of Delaware with its principal place of business in Franklin, Tennessee.
3.   CHSPSC is a foreign limited liability company organized under the laws of Delaware with its principal place of business in Franklin, Tennessee.

2

4. CHS is the sole member of CHSPSC.

5. SSM and CHS entered into the Asset Purchase Agreement (APA) on or about December 8, 2020.

6. SSM and CHSPSC entered into the Transition Services Agreement (TSA) on or about April 1, 2021.

7. The TSA had an initial term of six (6) months and was extended for two additional period of three (3) months each, for a total term of twelve (12) months from April 1, 2021 to March 31, 2022.

8. The aggregate amount of fees paid to CHSPSC by SMM under the TSA is $5,129,595.00

9. SSM and CHSPSC waived a jury trial pursuant to the terms of the TSA.

4. **CONTENTIONS AND CLAIMS FOR DAMAGES OR OTHER RELIEF SOUGHT**.

a. <u>Plaintiff</u>: Plaintiff brings claims sounding in breach of contract against CHSPSC pursuant to the TSA. Pursuant to the TSA, CHSPSC agreed to "use good faith efforts to provide the Transition Services [to SSM] in a manner consistent with how CHSPSC provides similar services to CHSPSC affiliates." However, CHSPSC's performance did not meet the standards achieved during CHS's operation of the Hospital, and SSM's revenues during the relevant period, and in particular during the eight (8) months before SSM was able to transfer the revenue cycle function for new services rendered to its own systems and teams, fell significantly below SSM's revenue projections. Additionally, CHSPSC did not bill and/or collect any payment, or collected less than the amount of the expected payment, for many services provided at the Hospital during the relevant period. Finally, the data migrated from CHS/CHSPSC to SSM's contractor at the conclusion of the relevant period was of such low quality that it was virtually useless, and SSM collected no meaningful amounts on the remaining open accounts.

Pursuant to Section 7(b) of the TSA, CHSPSC bargained for an exculpatory clause whereby it attempted to insulate itself from full liability for breach of contract damages unless its conduct rises to the level of "fraud, willful misconduct or gross negligence." Otherwise, "any liability of CHSPSC under this Agreement shall in no event exceed the aggregate amount of fees paid to CHSPSC by the Company hereunder." The aggregate amount of fees paid to CHSPSC by SSM under the TSA is approximately $5.129 million. However, SSM contends that certain of CHSPSC's conduct rises to the level of gross negligence and/or willful misconduct. Accordingly, SSM contends that the exculpatory clause in Section 7(b) is invalid as a matter of law, and SSM's recovery is not limited to the aggregate amount of fees paid to CHSPSC.

Further discovery is needed to calculate the exact amount of damages, but it is estimated to be in excess of $16 million. In addition to (and not included within) the above damages, SSM failed to receive approximately $1.6 million in CARES Act funding for services provided at the Hospital during the relevant period, for which it otherwise would have been eligible, as a result of CHSPSC's acts and/or omissions.

SSM also contends that CHS is vicariously liable for CHSPSC's breach of the TSA because CHSPSC acted as the agent and/or alter ego of CHS in connection with the transaction(s) and provision of the Transition Services to SSM.

SSM contends that its claims are the subject of 12 O.S. § 936, and therefore, the prevailing party in this action is entitled to the recovery of attorney fees as set by the Court.

b.      <u>Defendants</u>: Defendants deny SSM's claims and deny that SSM is entitled to recover damages from either CHSPSC or CHS/. CHSPSC contends that it provided the transition services in good faith and with due care consistent with the applicable contractual standard, and denies that SSM's alleged "Baseline Revenue Projection" is a contractual standard, warranty, or measure of CHSPSC's performance.

SSM's allegations appear to involve three general categories of claims: large-dollar claims, HRSA/CARES Act claims, and Indian Health Service claims. Defendants contend that those claims cannot be evaluated through aggregate revenue comparisons, but instead require individualized analysis of the relevant accounts, applicable payer rules and program requirements, documentation, coding, prior authorizations, medical necessity, eligibility, timely filing, payer decisions, appeal history, SSM's own actions or omissions, and other claim-specific facts.

Defendants further contend that SSM's alleged damages are barred or limited by the TSA, including Section 7(b), which excludes certain categories of damages and limits CHSPSC's liability, if any, to the aggregate amount of fees paid absent fraud, willful misconduct, or gross negligence. Defendants deny that CHSPSC engaged in fraud, willful misconduct, or gross negligence, and deny that SSM is entitled to recover damages, if at all, beyond the limits and exclusions negotiated in the TSA.

CHS/ also denies liability. CHS/ was not a party to the TSA, and neither the APA nor the TSA contains language by which CHS/ assumed CHSPSC's obligations or agreed to be responsible for CHSPSC's performance. Defendants contend that SSM cannot rewrite the parties' agreements to impose liability on CHS/ where the contracts do not place it. CHS/ denies that CHSPSC acted as its agent or alter ego and denies any basis to disregard the separate corporate forms. Defendants reserve all defenses asserted in their pleadings and under applicable law.

5.   **<u>APPLICABILITY OF FED. R. CIV. P. 5.1 AND COMPLIANCE</u>**.
Do any of the claims or defenses draw into question the constitutionality of a federal or state statute where notice is required under 28 U.S.C. § 2403 or Fed. R. Civ. P. 5.1?

☐ Yes  ☒ No

6.   **<u>MOTIONS PENDING AND/OR ANTICIPATED</u>** (include date of filing, relief requested, and date responsive brief to be filed).

No motions are currently pending.

7.   **<u>COMPLIANCE WITH RULE 26(a)(1)</u>**.  Have the initial disclosures required by Fed. R. Civ. P. 26(a)(1) been made?  ☐ Yes    ☒ No
If "no," by what date will they be made? <u>August 31, 2026</u>

8.   **<u>PLAN FOR DISCOVERY</u>**.

A.   The discovery planning conference (Fed. R. Civ. P. 26(f)) was held on July 20, 2026.

B.   The parties anticipate that discovery should be completed within nine (9) months.

C.   In the event ADR is ordered or agreed to, what is the minimum amount of time necessary to complete necessary discovery prior to the ADR session?

The parties conducted a voluntary mediation session before Joe Hampton on April 3, 2026. The parties are scheduled for a supplemental session with Mr. Hampton, on August 13, 2026.

D.   Have the parties discussed issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced, pursuant to Fed. R. Civ. P. 26(f)(3)(C)?

☒ Yes  ☐ No

The Parties anticipate exchanging appropriate protocols for the disclosure of ESI and anticipate they will be able to cooperate regarding the procedure for such exchange.

E.   Have the parties discussed issues relating to claims of privilege or of protection as trial-preparation material pursuant to Fed. R. Civ. P. 26(f)(3)(D)?

☒ Yes   ☐ No

To the extent the parties have made any agreements pursuant to Fed. R. Civ. P. 26(f)(3)(D) and Fed. R. Civ. P. 502(e) regarding a procedure to assert claims of privilege/protection after production and are requesting that the court include such agreement in an order, please set forth the agreement in detail below and submit a proposed order adopting the same.

The parties anticipate needing a stipulated protective order as discovery will include the exchange of Protected Health Information, protected under HIPAA, and highly confidential and sensitive information and the parties' proposed procedure for claims of post-production privilege/ protection will be included in the proposed protective order.

F.   Identify any other discovery issues which should be addressed at the scheduling conference, including any subjects of discovery, limitations on discovery, protective orders needed, or other elements (Fed. R. Civ. P. 26(f)) which should be included in a particularized discovery plan.

Plaintiff contends there were at least 30,000 claims within the scope of CHSPSC's responsibility during the relevant time period.  The parties have agreed to confer on ways to manage discovery in this case, including the use of various tools to mitigate the burden of document production such as selection of example claims and/or sampling.

Defendants agree to confer with SSM regarding procedures to manage claim-specific discovery efficiently. Defendants anticipate that discovery should be structured to permit meaningful analysis of the principal categories of claims at issue, including large-dollar claims, HRSA/CARES Act claims, and Indian Health Service claims. Because those categories may involve different payer rules, documentation requirements, billing processes, deadlines, denial reasons, and damages issues, Defendants believe the parties should discuss whether claim-specific discovery should be organized by category and whether representative claims, sampling, phased discovery, or other tools may be appropriate to manage burden.

9.   **ESTIMATED TRIAL TIME**: 1 week_____

10.   **BIFURCATION REQUESTED**: ☐ Yes  ☒ No

11.   **POSSIBILITY OF SETTLEMENT**: ☐ Good    ☒ Fair    ☐ Poor

12.   **SETTLEMENT AND ADR PROCEDURES**:

A.   Compliance with LCvR 16.1(a)(1) - ADR discussion:  ☒ Yes   ☐ No

B.   The parties request that this case be referred to the following ADR process:

☐ Court-Ordered Mediation subject to LCvR 16.3
☐ Judicial Settlement Conference
☒ Other: The parties conducted a voluntary mediation before Joe Hampton on April 3, 2026. The parties are scheduled for a supplemental session with Mr. Hampton on August 13, 2026.
☐ None - the parties do not request ADR at this time.

13.   Parties consent to trial by Magistrate Judge?  ☐ Yes   ☒ No

14.   Type of Scheduling Order Requested.  ☒ Standard  -  ☐ Specialized  (If a specialized scheduling order is requested, counsel should include a statement of reasons and proposal.)

Submitted this 24th day of July 2026.

*s/Daniel G. Webber, Jr.*
Phillip G. Whaley, OBA #13371
Daniel G. Webber, Jr., OBA #16332
Patrick R. Pearce, Jr., OBA #18802
Devin C. Frost, OBA #35114
**RYAN WHALEY PLLC**
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
dwebber@ryanwhaley.com
rpearce@ryanwhaley.com
dfrost@ryanwhaley.com

*Attorneys for Plaintiff*

7

*Kellie M. Maguinness*
*(Signed by filing attorney with permission)*
James G. Munisteri, *pro hac vice*
Texas Bar No. 14667380
FOLEY & LARDNER LLP
1000 Louisiana, Suite 2000
Houston, TX  77002
Tel. 713.276.5500/Fax 713.276.5555
jmunisteir@foley.com

Kellie M. Maguinness, *pro hac vice*
Texas Bar No. 24149690
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX  75201
kellie.maguinness@foley.com

Fred A. Leibrock, OBA #14146
PHILLIPS MURRAH P.C.
424 N.W. 10th Street, Suite 300
Oklahoma City, OK  73103
Tel. 405.235.4100
fleibrock@phillipsmurrah.com

*Attorneys for Defendants*